You may be seated. We'll move to our next case, 25-1669. We'll hear from Petitioner's Counsel when you're ready. Good morning, Your Honor. May it please the Court, I'm Joseph B. Incali, and I'm representing the Petitioner's Sligo Creek Center. So there are two intersecting issues in this case, the merits of the Secretary's decision, but also how much of the fact-finding that supports that determination should be made by a jury. So as to the role of the jury, the constitutional principle seems pretty clear. Trust the jury. That's been the centerpiece of Anglo-American jurisprudence since the 11th century. In this case, a jury could have found that Sligo Creek Center correctly interpreted and applied its TB policy in light of the governing clinical and regulatory standards of care. That finding of fact would have directly undermined the Secretary's Appeals Board's reasoning and result. So in that sense, Jarchese actually exposes the constitutional flaw in the Secretary's internal review process. Non-independent judges, no discovery, presumptions of noncompliance, backward burdens of proof, escrow of civil money penalty, you wait 10 years, all the rest. So here, the Appeals Board obviously thought there was some kind of material fact issue. They purported to interpret Sligo's TB policy to find implied obligation. I'd like to ask about the Supreme Court has set up an inquiry that asks about two things. The remedy and the cause of action, right? And the government agrees if we were in an Article III court, this would be a jury question. But the question is, can the executive do this without an Article III court? What is your position on whether an Article III court is necessary for anything short of a civil monetary penalty? Or I guess civil monetary penalty might be the shortest penalty. Could the Secretary withdraw Medicare funding without going through an Article III court? Could the Secretary withhold funds or appoint substitute administrators for a time without an Article III court? I don't think we need to go there for this case. So your position hinges entirely on the remedy, the penalty, that it's a penalty, it's a civil monetary penalty, and the Secretary can do other things but can't do the penalty because that is like a common law cause of action? In this case, no, in this case, both problems, the cause of action has to do with standards of clinical care, clearly a common law issue, goes back a long time, and the remedy. So in this case, we hit the bullseye on both of the issues. Jarkazi really seems to clear up from a lot of the confusion. That's exactly what I'm trying to figure out. So say I agreed with your characterization that this is about a standard of care, like this is just like a medical negligence lawsuit. I'm not sure I believe that, but say I do. Could the Secretary say, I want an ALJ to decide that this was medical negligence, and so we're going to withhold funds. Could the executive do that without involving an Article III court? Yes. They could impose a denial of payment for new admissions. So it's not the cause of action, really, that's doing the work. It's the penalty that's doing the work. It's combined. Yes. You have to have both. And I think Jarkazi clears up a lot of the confusion, or the inconsistency, anyway, in a lot of the previous cases that talk about one or the other. Jarkazi, again, it's not 100% crystal clear, but Jarkazi makes pretty clear that it has to be both. I think we're talking about maintaining an infection control program. In what's in question here, is there a specific breed of common law to what you believe this cause of action is analogous to? Maintaining an infection control program. What fraud tort, or what tort out there is it? Well, the notion of civil liability for allowing an infection or not stopping an infection or whatever, I mean, the personal injury cases based on that theory go back forever and ever. I mean, plus, add in the public health aspects of tuberculosis control, which again have been a public health, you know, something that local government has been responsible for for hundreds of years in this country. But you agree that you could have been penalized even if there were no residents suffering any injury? You can't be under the statute? That's a long involved answer, but the short answer is the Secretary's Appeal Board in recent years has said that in order to penalize and impose an immediate jeopardy penalty, which is the enhanced civil money penalty, et cetera, there has to be actual harm or plausible likelihood of harm. But the statute doesn't say that, right? The statute and regulations, I thought it had a graduated penalty system, and if someone's actually harmed... It's worse. Because there's a provision about if a death occurs, you definitely can't get a reduced penalty if someone's harmed. There are grids and all that sort of thing, but they are not regulatory. They're all informal manuals and so forth. I'm curious about, to Judge Floyd's question, what's your best example in the statutes or the regulations where the Congress or the agency adopted a common law standard, a common law tort standard? This very case. But like in the statutes or the regs? I know in the opinions they used words like standard of care, but I didn't see that in the regs or the statutes, but I may have missed it. The Supreme Court, as recently as Tavelsky, and I think the co-counsel is going to talk about this, talks about this particular statute imposing clinical standards of care. And it's clear, if you look at, you can go all the way back to the legislative history and why they adopted this statute the way they did. It was based on an Institute of Medicine report. Congress didn't trust the Reagan administration to do what they said, so they made the statute extremely detailed. And it tracks, almost provision by provision, the clinical standards that are set or recommended in this Institute of Medicine report back in 1983 or 84, whenever it was. And just issue by issue by issue. Now there are some provisions of the statute and regulations and an example might be physical plant standards that are not clinical standards of care, that are based on traditional standards of care. But the infection control one is the perfect example because it doesn't include any standards itself. It specifically says you have to adopt and implement accepted standards promulgated by somebody else, such as the CDC or state health departments. It specifically refers the facility in the statute and in the regulations and in the interpretive guidelines back to clinical standards that are adopted by somebody else. My question before it is now, put a name on the tort that you claim you have in this case. The underlying standard would be a traditional failure to meet a standard of care, personal injury type, failure to meet a standard of care. And you agree that any traditional tort that I can think of, someone would actually have to be injured, right? There's no such thing as a tort of creating a risk of harm to people that doesn't materialize. There's no traditional tort that looks like that. Name one. I'm not sure we have to go that far. Name a single common law tort that does not require an actual injury to an actual person. That is based purely on what you did was risky, therefore you have torted them. Can't come up with one right off the bat. But there are some distinctions in some of the Supreme Court cases. Again, whether they survive Jharkesi or not, I don't know. Let me ask you about the question I was hoping to ask earlier about Jharkesi. I'm a little confused by your position. Do you believe there is a public rights exception after Jharkesi or not? If there is... No, no, no. I'm not asking you if there is. I'm asking do you believe there is? I don't think there is. I agree with Justice Gorsuch. Okay. So now I've looked at your opening brief. Does it ever say that? Does it ever say there is or not? Does it ever advance an argument that Jharkesi supersedes the public rights exception? I know the amicus basically says it. Where does your opening brief say after Jharkesi there is no public rights exception? Well, I didn't say it in the brief because I don't think... Oh, okay. And you know that under this Court's repeated statements, arguments that are not in your opening brief are waived. Well, I didn't think we needed to say it directly because we didn't think we need to... I don't think we need to get there to win this case. I understand. No, I understand. And you can win this case without us saying this, but... Right. But now you're saying if we don't... Now you're saying if we don't agree with you on your initial case, you should do this other thing, but this other thing is nowhere in our opening brief and we're the petitioner. No. I mean, I'm answering your question, right? I don't think... Okay. So you agree that for purposes of this case... I don't think we... No, no, no. Not that. You agree that for... You said we don't have to get there. We didn't do it. You agree that for purposes of this case, we must decide this case on the assumption there is a public rights exception, that we can't say there isn't one because you as the petitioner never argued that ever. I can buy that. Even if there is a public rights exception, I would say this case is not it because... So why is the Third Circuit wrong? Pardon? Once I assume there is some public rights, some non-zero public rights exception, why is the Third Circuit wrong? Because in this case, the government is not giving us something. The government is taking something away and that's a classic penalty, right? We are just a contractor to the government. They are not giving us a benefit. They're giving the resident the benefit. They're giving the beneficiary... Exalta is a penalty too. I'm sorry? Exalta, the Third Circuit case, I'm probably saying it wrong, but the Third Circuit decision that I just asked you why is it wrong, that case involved a penalty too. In that case, though, there was not even a hint of an underlying cause of action that, as the Supreme Court says, brought common law soil with it. That was entirely regulatory in the nature of like a building code. So in answer to your question earlier, there are regulations that impose essentially building codes. Isn't it kind of negligent to ship a can of paint without properly sealing it up, you know, on an aircraft? You can make an argument that that was kind of like a negligence lawsuit too. I suppose, but I mean the Third Circuit's kind of in both ways because there's the Sun Valley Orchards case, which goes exactly the opposite way on arguably analogous... Should we hold this for Sun Valley Orchards? The Supreme Court granted certain in that case. You know, I'm kind of wondering what the Supreme Court is going to do. They do need to clear up Jarkazi, I suppose, because they've opened a lot of doors. I'll tell you what they're going to do if anyone files a cert petition in this case. They're going to hold this case for the outcome in Sun Valley Orchards, right? I would presume so, but I would not presume to tell the Supreme Court what they're likely to do. But, I mean, you get the sense and... Is your client injured if we hold it? I know that the government has their money in escrow. They get it back with interest if the government loses. The government takes the position we get interest from the date the court says we get it back, not from the beginning. So, yes, I mean, we want the money sooner rather than later, but yes. I'm well past my time. I've reserved a couple of minutes. Thank you very much. Good morning. May it please the Court, my name is Mark Reagan. I'm here on behalf of MECAS Curiae, the American Healthcare Association, and the National Center for Assisted Living. I'd like to, given that there's been much conversation already about Jarkazi, I'd like to speak to some of the questions that have been asked. I think it makes a lot of sense. I think that Jarkazi is messy in some ways, and I think that the circuits are trying to figure it out. And the event that Justice Rushing referred to associated with the Supreme Court taking review of, or taking cert of, the Sun Valley Orchards, presumably, the case will presumably explore the, whatever the scope of Jarkazi was intended to be, and the extent to which there is a public rights exception that still exists. I mean, it may not. The Court added a second question presented that was just about whether the statute even authorized penalties. Also true, just like the recent FCC case, maybe we thought that that would give some instruction as well, and it doesn't feel like that's necessarily going to go that route, at least in terms of question one. But as to Justice Floyd's question about, give me an example of a tort common law theory that involves infection control. The COVID cases. All over the United States, there were COVID infection control cases brought against health care providers, including nursing facilities. So let me ask you the same question I asked your friend. Can you bring a tort based on COVID infection where no one actually gets COVID? No, right? No. There's not a single common law. Can you identify a single common law tort that doesn't require harm to someone? No, I cannot. Why doesn't that suggest this is not a traditional common law tort? Because in this instance, somebody contracted active tuberculosis. Sure, but that's the impetus for the action, but that's not required in any way, shape, or form? It is required for a civil money penalty of at least the size, actual harm, or the finding of immediate jeopardy or death. Okay. Can I get a tort damages based on a finding of immediate jeopardy? Name a tort. Actual harm, at least. Name a tort that I can get damages based on the prospect of immediate jeopardy. If there's death associated with it. No, no, no, no. You said jeopardy. Yes, yes. I can get tort. This is a very simple question. Name a tort where you can get damages based on the risk of immediate harm to someone when the harm has not yet materialized. Name such a tort. The definition of immediate jeopardy involves the death of a resident. Okay. So the answer is you can't think of it. In response to my question, the answer is you can't think of such a tort. The underlying definition of that. I'm not asking about what you claim this definition means. I'm asking you about common law torts. I've asked at least three times, and you haven't named one. Yes, yes. In a common law negligence tort, there are all their names. Oh, no, no. Broaden it beyond negligence. Any tort you want. There needs to be a demonstrated harm, an actionable harm, which could be conceivably physical or emotional distress. Okay. Well, let me ask you about this public-private thing a minute. One exception is where you have highly technical modern regulations that I think the quote was bring no common law soil with them.  In this case, would not those regulations fall into that highly regulated category and therefore stay in the public sector? I don't think they are in the least, Justice Floyd. Co-counsel referred to particular elements that don't deal with care, and those particular elements, for example, physical plant, they read just like the building code regime that was present in Atlas Roofing. However, at page 15 of our amicus brief, we recite specifically to Congress's adoption of the Nursing Home Reform Act and its specific desire and intent to build the Nursing Home Reform Act around professional standards of care. And in the Talevsky case, which both sides of this case have cited to, the U.S. Supreme Court found that in the Section 1983 context involving governmentally operated facilities, therefore Section 1983 would apply, that there were private rights that beneficiaries could assert based upon the underlying provisions of the Nursing Home Reform Act. If those provisions of the Nursing Home Reform Act gave rise to a private right of action, they clearly are analogous to common law principles. That's what the court said in the Talevsky case. Recently, that's a 22-23 opinion, a 72 to sue. What about the fact that this is a voluntary government benefit program? Is that relevant? Does that mean government's argument seems to be once you're in a voluntary government benefit program, it doesn't matter whether the government's giving you money or taking your money, new property, old property, none of that matters. What's your question? Fundamentally, I believe it comes down to the framework of Jharkhese, which is, is this a remedy that was designed to deter or punish? Is it a common law remedy, and is it based upon something that is similar to a common law cause of action? It is not an all-or-nothing proposition from the standpoint of how it's framed and whether or not a health care provider chooses to participate in the program. Does it mean that for fact-finding purposes, when it has that kind of remedy applied? There's an old case called Passavant, I believe, where the Supreme Court blessed the idea that public rights were involved with imposing duties on foreign imports. And that case also had a penalty that attached. So the duties applied to the imports, and the court said that's public rights, not private rights. And then there was a penalty for the amount by which the imports were undervalued. And the court said that's part of enforcing this entire program. That's all fine. Does that apply here? What do we do with that? Well, it comes back to Jharkhese. Jharkhese didn't say that any enforcement action undertaken by the Securities and Exchange Commission would be necessarily subject to a Seventh Amendment right. But I think what Judge Rushing is saying is that that's different. I mean, I guess you could say, like, no one has to sell securities. Fair, I guess you could say that. But it's at least one more move that says no one has to take money from the federal government by participating in Medicare. If you choose to do that, there are consequences to that decision. So I don't really think that Jharkhese works in that regard because it's another step forward to say no one has to sell securities. There's all kinds of ways in which the rules are different. Look, no one's forcing you to take the government's money, but when you take the government's money, there are consequences that come with taking the government's money. Again, back to Sun Valley and what instruction it may provide us, no one required an employer to employ a holder of an H-2A visa either. But in the instance where that employer— But, again, that's another step. That's still fighting the lake that there's something different about saying if you want to participate in a government benefit program and take millions or billions of dollars from the federal government, there are strings that come with doing that that are all in some ways designed to make sure the federal government is getting what it wants out of its money. I mean, it's not like there's not a gigantic problem of sort of fraud, you know, abuse in the Medicare. I mean, everyone knows this. This is why there are massive Medicare fraud prosecutions and things like that. The government has a legitimate interest in making sure that the money it's spending is actually being spent to do the things that it actually wants it spent to do. And we have no argument with that. All we're asking for is a neutral fact finder if a contracted provider sustains the type of legal remedy. But, look, at the end of the day, Sun Valley Orchards may give us a view as to that scope. Right now, no one's arguing to this court that determinations of participant eligibility or even provider payment are necessarily subject to a Seventh Amendment jury trial rate. All we're speaking about is when there are civil money penalties applied with a common law analogous claim. That's when this neutral fact finder should be provided. Thank you. We'll hear from the government. Good morning, and may it please the court. David Peters on behalf of the United States of America. I understand counsel on the other side to have conceded several things. One, that CMS can impose other penalties for this exact same violation, including ultimately terminating the provider agreement, but also taking more intermediate steps, including stepping in, stopping payments, taking over the operation of the facility. And they can do all of that without reference to an Article III court. I also understand the other side to have now conceded that CMS can determine eligibility for beneficiaries for Medicare and to make determinations about provider agreements without reference to an Article III court. I think that gives up the game. I mean, Stern v. Marshall, the Supreme Court's decision says, even when there are mundane factual disputes that are concerning private rights, that has to be adjudicated in Article III court. And the fact that now everyone agrees that CMS can do all these types of adjudications outside of the context of Article III confirms that this is a public rights scheme. I take the other side's argument to be that the difference, the key difference in their view, is that there is a civil monetary penalty being enforced here. And they say that, therefore, turns this into a Seventh Amendment case. But the Supreme Court has expressly rejected that argument, including in Jarchese, where it said when Congress assigns the enforcement of public rights to the executive, it can do so and have those public rights be enforced through administrative penalties that are assessed without a jury. So just to clear something up again in terms of narrowing the range of dispute, I guess I read your brief. I just want to make sure, because I read your brief as conceding that, absent the public rights exception, this is purely legal and would have to be in front of a jury. Yes. That is a two-step analysis. That step one is satisfied. Step one is that, does this implicate in the Seventh Amendment in the first instance? This is a civil monetary penalty. Toll says that civil monetary penalties are equivalent to common law remedies, and, therefore, they implicate the Seventh Amendment. But the Jarchese analysis is a two-step analysis. Is the Seventh Amendment implicated? Yes, it is. Nonetheless, can this be the kind of thing that is assigned to the executive for adjudication because it concerns quintessential public rights? And this does. And the Supreme Court pointed to its decision in the Oceanic Steam Navigation case from 1909. And there, that was a scheme in which the Secretary of Commerce, through kind of a quarantine statute, could impose civil monetary penalties if someone imported individuals into the United States with infectious diseases, including, ironically there, tuberculosis. Well, ATLAS law, I think, still remains good law. I'm trying to get this public-private thing resolved in my head. And it provided that there's no Seventh Amendment right to a highly technical program. But this program is a little open-ended. It gives the nursing homes a whole lot of discretion to do and don't do things. Is this conduct, is that opportunity under the Act still consistent with ATLAS-Roofing? Your Honor, I think the best case law here, ATLAS-Roofing is still good law, at least its core holding. But I think the best case law here is the Supreme Court's decisions about public benefit programs. The Supreme Court, including in Jarchese, said that public benefit programs are really at the core of the public rights scheme. And we cite examples in our brief dating back to the founding of Congress assigning to the executive the ability to make determinations about granting public benefits. About giving public benefits. And I would say, Your Honor, the union carbide case, that's the situation in which the Supreme Court points to Medicare reimbursement schemes, which is about payments to providers. Making payments from the government to individuals or corporations. But the union carbide, so yes, Your Honor, the historical examples that we cite are payments from the government to eligible beneficiaries, veterans, individuals who suffered damages during the Whiskey Rebellion. But I think the import of the union carbide case, right, is that's the case about the federal insecticide, fungicide, fee for a case, right? Rodenticide. And rodenticide. Thank you. And the Supreme Court said, yes, this kind of arbitration scheme that Congress had set up in that statutory provision was a public benefit, public rights scheme, even though it had limited kind of Article III review of the decisions that were going on there. And the example that it gave of a comparable public rights scheme is the Medicare provider reimbursement scheme. Jharkhasi doesn't rely on union carbide at all. And that means union carbide is still the law, right? But Jharkhasi seemed to be trying to reorient the case law. And should we be at all concerned that they only cite Thomas v. Union Carbide for the principle that this is a very confusing area of law? They don't cite it for its legal analysis. I think the key, though, Your Honor, is that in Jharkhasi it said, look, we're not closing the book on what are public rights schemes, but they gave examples, historical examples, and they included public benefits schemes, right? They didn't cast doubt on Thomas. And I understand the other side to say, yes, of course it's a public rights scheme. CMS could, if it so wished, impose any number of remedies here. The only difference is this is a civil monetary penalty, and Jharkhasi expressly speaks to that version of the argument by pointing to the Oceanic Steam Navigation case. What is the – Jharkhasi also said we need to identify – the exception, right? There's a lot of tension, right? Arguably they set up a scheme where the presumption is private rights, and the government has to identify a centuries-old rule that shows this falls within the public rights exception. What shows that for monetary penalties in the benefits context? Taking, not giving. I'm not sure – Jharkhasi goes that far and says categorically we're going to say, you know, exactly what is a public right expressly. I totally agree with you. They also seem to say there's an assumption that this is a public right unless you can prove it has a common law soil. So it's confusing. I think several factors all from Jharkhasi point in the same direction here, right? One, it identified public benefit programs as kind of – But do you have a – if you have this centuries-old, what's the closest thing you have to that? The examples we have are, again, from the founding, situations in which Congress has assigned to the executive the authority to adjudicate individuals' eligibility for benefit programs. And we have from the 1909 decision, which is the Oceanic Steam Navigation case, but decisions after that as well in the tax context, as you said, in the kind of importation of goods context in which the Supreme Court has upheld the imposition of a monetary penalty in the context of a public rights scheme. I don't have those two things together where we have the imposition of – but it's a little bit hard to imagine, Your Honor, that Congress would have thought when it was, you know, allocating limited funds to pay, you know, veteran benefits, if someone came around and got a veteran benefit through, you know, mistake or fraud, that they didn't think that that executive entity could then go after that and recover that money and impose a penalty for it. I mean – Yeah, the government could reconceptualize this entire penalty as recouping funds, right? And then we might have an entirely different question, and it would be easier for you to make that argument. But it's not the way it's set up. I think that the three factors are – or the three kind of decisive ones are the historical precedent of public benefit programs being at the core of the public rights scheme, the fact that civil monetary penalties can be imposed to enforce public rights. That's, again, this Oceanic Steam Navigation case. And as kind of the question in the first part, there isn't a common law equivalent to this, right? You know, this court has held in the Liberty Commons nursing case that we cite in our brief that there doesn't need to be showing of actual harm to establish immediate jeopardy under the Reform Act. And so, you know, the petitioner here would have been liable even if the one resident hadn't established or developed active tuberculosis. And it's, I think, telling that CMS isn't stepping into the shoes of that individual. They're not seeking to recover damages on behalf of that individual. The penalty here is for the period in which the nursing home was not in compliance. That doesn't look like a common law claim in any way. Can I ask you about the Third Circuit decision I asked the other side about? Does the government agree with how that decision goes about it? Do you think it's good for you? I think exalt is helpful, right? I think it's a slightly different scheme in that that's a – No, but the way that it conceptualizes how the public rights exception exists in this moment of, admittedly, uncertainty until the Supreme Court decides what they ultimately want to do where it says, like, look, we know there's still a public rights exception. We know that this thing doesn't qualify. We know that this thing does qualify. We think that on balance this thing looks more like the thing that qualifies than the thing that doesn't. I think that's right. I'm not fighting that exalt is helpful for us. I think it's the right decision. My point was only that I think this is an easier case in some ways because it's a public benefit program and the Supreme Court specifically identified public benefit programs as kind of, again, this historical example of a public rights scheme. So you think that if that case is right, a for sure are you in this case? I think that's right. I think it's a slightly different – the Supreme Court has said you look at each statute individually, but I do think this is an easier case than regulation of paints that are being transported. This is kind of really at the core of what Medicare, Social Security, Medicaid, those are kind of the classic examples of a public benefit scheme, which is what the Supreme Court pointed to as a classic example of a public rights scheme. So just to take the one more step that seems to be your argument, all of those schemes that you just listed would be public rights, not private rights, and the government could impose any sort of penalties it wanted to in that context without involving courts. So I don't want to go that far. I do think those are public benefit schemes, obviously. I do think they're public rights schemes. And to the extent that those schemes are setting conditions on the receipt of federal funds that are being used for the public benefit, then I think Congress can say to the executive you enforce those conditions on receipt of funds through the imposition of monetary penalties that don't need to be assessed with a jury. My hesitation only, Your Honor, is I don't think if Congress includes anything in Title 42 and labels it Medicare, the Constitution is concerned with substance here, and so I think you have to actually look at what the condition on the receipt of payment is. But this one is an infection control program to make sure that nursing homes that receive federal funds don't have wild outbreaks of tuberculosis that threaten beneficiaries. I mean, that's an easier case. That's really it makes good sense why Congress has said we don't want our money going to nursing homes that don't have processes in place to ensure the residents don't get sick from a very deadly disease. And so is there some kind of outer limit to the kind of conditions? Maybe, but this court doesn't need to decide that to say that this requirement is one that is clearly integral to a public rights scheme. If there are no other questions. Thank you for your argument. I believe both the amicus and petitioner have time on rebuttal. Is that right? Thank you, Your Honor. Three quick points. I've been racking my brain just to remember torts from all those years ago. I think there are probably a few torts that don't require actual harm. I mean, I'm thinking of like old breach of promise kind of torts under the common law, maybe pain and sufferings, bystanders, you know, the mother who sees the accident, that kind of stuff in whatever states that still exist. So there might be some out there.  Second, the government seems to be taking the position that if the government pays money, we need not allow jury to find facts no matter what it does thereafter. And I think that goes to Judge Rusher. When we were talking about the two prongs to Jarchese, the underlying right plus the remedy, and I think they're disregarding. But based on what the government just said, we're past the two-prong test. We're into the public rights exception, right? I'm not. Like we're in like part three of the Jarchese opinion, not part two anymore. I may be getting the parts right. But there's the part where the court concludes the two-step process. We're in Seventh Amendment land. And then there's the part where they reject the public rights doctrine, right? You can read it that way, but it's not clear that that's what they meant, which I presume is why they're taking the next case to clarify that. I mean it is a little murky to say the least, okay? But because they do focus so much on the penalty part, on the civil money penalty part, and that seems to be what's driving it, whether or not that's what they really meant. And I think that's the point I would come back to is I think the government's ignoring that part of Jarchese, which is the court's really focused on the civil money penalty part. Rather than the money being paid by the government part. Can I just ask you one additional clarification in terms of the things you agreed we could do without entering Seventh Amendment land? Could the government say we've concluded based on your past violations that we should fine you $4,000. But the way we're going to do that is not we're going to make you pay us $4,000. We're just going to withhold the next $4,000 we otherwise would have given you. Do you think there's a Seventh Amendment jury trial right then? I'm going to hedge a bit. I think that's a hard question for you, right?  Well, it's not the way the statute – Because the instinct seems like the answer is probably obviously yes. But if it's obviously yes, how is that any different from this situation, right? Is that the dilemma? No, because if what the Congress says is to get around Jarchese is as an alternative to civil money penalties, we're going to just call it something else. I think that doesn't get – But we are. We're never going to issue a judgment. We're never going to order you to pay money. We're just going to say that your next check is going to be $4,000 light. Well, there's always going to be some appeal from that. The underlying question is who gets to decide what the material – or who makes the judgments of fact on the material facts, right? And so you're right back into that same question. If you're just calling it by a different name, you're not resolving the question who makes the factual judgment. And that's all we're talking about. I am sure that the nursing home crowd, the lobbying crowd, and your group and the government all participated in the drafting of this legislation. If the right to an Article III relief from the penalty section, why wasn't that written in the law? Well, I have no idea who participated in the drafting, but it was way, way, way before Jarchese or any of the public rights cases. So I don't – it was back in the 80s. So I don't think that was, frankly, something that Congress thought about at that point, which, as you know, comes up from time to time. Congress never just thought about it. Finally, I know I'm past, but if I can have ten more seconds. I do want to draw the attention back to Kaiser, which is also – Kaiser-Busbuke, which is also a Supreme Court case that gives you some guidance here, and that is about the substance of what the government did. Here, the appeals board found implied obligations, and Kaiser pretty much says you can't do that. So you can decide this case on the merits without even worrying about Jarchese, and, frankly, we would be just as happy if you did that. You could decide it as a Kaiser case. So with that, I give Mr. Reagan the last word. Thank you, Justice. Justice Floyd, I don't think that there's any evidence that the nursing home industry conceded to the existing civil money penalty scheme that is present in the nursing home reform act. Well, I'm not saying you conceded. You could have made it easier. But let's put it this way. Time has told us and shown us that that administrative process is by no means reflective of a neutral decision maker in the least. Also, I guess one of the questions that I think remains is does something have to be a complete tort to land in common law soil? That is not necessarily dispositive of the issue. And I know much of Justice Hayden's, your questions really focused on a complete tort, and I'm not sure that that's necessarily the test. If all of the other elements of it are, in fact, present except the ones that we've been engaged in debate. And last, Justice Floyd, when the Supreme Court in Jarchese spoke about the notion about what an example of a public rights statute would be, it, as you know, said it, and it was talking about Atlas roofing, it resembled a detailed building code. That's not what Congress intended to do with the Nursing Home Reform Act. It intended to set up a scheme of essentially topics that reflected priorities through which the professional standards of care would be used for that particular purpose. And at the end of the day, beneficiaries under the Medicaid Act, under the same provisions of the Nursing Home Reform Act, have private rights. It may be that it's not a three-step process. It might be two. Somewhere between private rights and the public exception or the public rights exception may be where ultimately this particular analysis is. So thank you all very much for the time. And I do appreciate it. And we very much appreciate the ability to speak to the court on behalf of the associations. Thank you. We'll come down and greet counsel and then proceed to our last case of the morning.
judges: Allison J. Rushing, Toby J. Heytens, Henry F. Floyd